Reverend Bernard Ward, Plaintiff-Appellant, v. Chicago Transit Authority, a Municipal Corporation and Norman Davis, Defendants-Appellees.

Gen. No. 49,415.

First District, Third Division.

September 24, 1964.

Louis M. Leider, of Chicago (Melvin B. Lewis, of counsel), for appellant.

William J. Lynch, William S. Allen, and Harry I. Parsons, all of Chicago, for appellees.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The only question presented by this appeal is the adequacy of the damages awarded the plaintiff, Bernard Ward, in his personal injury suit against the Chicago Transit Authority. A jury returned a verdict for $1,000 and judgment was entered for this amount.

On May 30, 1956, about 6 p. m., Bernard Ward was returning home on one of the C.T.A.'s buses. He alighted at an intersection, intending to transfer to a bus traveling in a different direction. A bus proceeding in his intended direction stopped at the corner and a woman, whom Ward presumed to be a passenger, boarded. However, when he attempted to follow he was told by the driver that he should take the next bus. He later learned that the woman who had boarded just ahead of him was not a passenger but the wife of the driver and that the bus had reached the end of its run. While Ward was standing with one foot on the step of the bus with his hand grasping

the handrailing, the bus started to move, throwing him to the pavement.

The evidence is contradictory as to exactly what took place at this time. Ward testified he was knocked unconscious by the fall and that when he regained his senses he was lying in the street with one of the front wheels of the bus pinning his legs. He said that the driver backed the bus up a short distance, helped him to his feet and into the bus where he was placed on the long seat just behind the driver. His trousers were torn and his legs were scraped. The evidence on behalf of the C.T.A. was that Ward had fallen to the street but that the wheels of the bus had not touched him, and that it had not been necessary for the driver to back up the bus. The driver testified that although he helped Ward to his feet, Ward got on the bus and took a seat without assistance. The driver saw that the trousers were torn on one leg but did not see any blood.

Ward was driven to the bus barns and from there the police took him to the emergency room at St. George's Hospital. His legs were massaged, scrubbed and bandaged. The total bill for these services was $9.

Ward further testified that his legs pained him severely that evening and a telephone call was made to a Doctor Lewis. He went to see Doctor Lewis at Provident Hospital the next morning and the doctor diagnosed his injuries as severe abrasions and contusions of both legs from which blood was oozing; he also found lumbo-sacral strain. Dr. Lewis placed him under observation for nine days at the Provident Hospital where he was given various treatments and an x-ray examination. The total hospital bill was $208.75. He continued to see Dr. Lewis until November of 1956, and continued to receive medical treatment. At Dr. Lewis' request, he consulted a Dr. Hasbrouk, an office associate of Dr. Lewis. Medical bills owed Dr.

Lewis totaled $240 and the charge for the single consultation with Dr. Hasbrouk was $35. The plaintiff testified that during this period and for some time thereafter he found it necessary to use crutches and later a cane, and that he still found walking quite difficult.

At the time of the occurrence Ward was employed by the Midland Hotel as a bus boy earning a salary of $37 a week. He stated that he also received a share in the tips of each of three waitresses with whom he worked, but this was denied in a letter from the hotel management which was read to the jury. He said he had not tried to go back to his work at the hotel from the time of his injury and had been unable to find other work which he felt physically able to do.

He further testified that he was also an ordained minister of the gospel, presiding over his own church and preaching Sunday sermons there which required him to stand for periods of 30 minutes to an hour, and that he visited members of his congregation in hospitals, jails, and occasionally at their homes. He stated that he was unable to stand for long periods of time without suffering pain, that he found traveling difficult and had been forced to curtail most of his visiting activities. He stated that he often received invitations to speak before other congregations, and on these occasions good will collections were taken up for him which usually amounted to about $30 per engagement. Since the time of the occurrence he said he had been unable to accept more than two of these a week due to his disability and thus had suffered further loss of income. He complained that his right foot often twisted, catching his left trouser leg and causing him to fall; that his legs continued to be weak, that he had to hold on to banisters and that after sitting he had to rise slowly to his feet.

■ Ward contends that the award is inadequate on its face since the special damages proved by him

are greater than the amount of the verdict. This, however, is not quite correct. The special damages which may be said to have been proven were Ward's medical and hospital expenses and of these the jury might have questioned the need for nine days of hospitalization. The remainder of the alleged damages were also open to question by the jury. It could have questioned the need for the plaintiff to have been unemployed from the date of the occurrence until November 1956; likewise, amounts allowable for pain and suffering, or for the loss of the good will offerings from engagements as a guest preacher, were for the jury to decide. There is no way in which this court can determine how much credibility the jury may have given to Ward's testimony.

The fixing of damages in a personal injury case is within the province of the jury. Where the jury has been correctly instructed on the measure of damages, as it was in this case, and there is no showing that the size of the verdict was the result of passion or prejudice or that the jury obviously overlooked an element of damages, the amount of damages awarded by the jury should not be disturbed on review. Giddings v. Wyman, 32 Ill App2d 220, 177 NE2d 641. The verdict of $1,000 was more than $500 in excess of all of the plaintiff's medical and hospital expenses. There is nothing so grossly out of balance about this, under the particular circumstances of this case, as to make us believe that the jury disregarded the court's instructions. We must also give consideration to the fact that the trial judge, who saw and heard all that took place at the trial, approved the verdict.

The judgment of the trial court will be affirmed.

Judgment affirmed.

SCHWARTZ, P. J. and SULLIVAN, J., concur.