Jamal Haleem, et al., Plaintiffs-Appellants, v.
Marcelle Onate, Defendant-Appellee.

Gen. No. 50,404.

First District, Third Division.

June 9, 1966.

Gomberg & Missner, of Chicago (Sidney D. Missner and John M. Murtaugh, of counsel), for appellants.

Orner & Wasserman, of Chicago (Norton Wasserman, of counsel), for appellee.

· MR. JUSTICE DEMPSEY delivered the opinion of the court.

The sole question raised by this appeal is the adequacy of damages awarded to three plaintiffs for personal injuries sustained in a motor vehicle collision. The plaintiffs rely chiefly on the fact that the damages awarded to them by the jury amount to less than their expenses for medical treatment and lost earnings.

The accident occurred on June 4, 1962, when the defendant's automobile, going ten miles an hour or less, struck the rear of the plaintiffs' vehicle which was stopped in a line of traffic on 63rd Street in Chicago. The impact appears to have been light: there was no damage to the rear end of the plaintiffs' car and the defendant's automobile sustained only a broken head lamp; the plaintiffs' car was pushed a few feet forward into the auto ahead of them.

The plaintiff Haleem, the driver of the car, claimed that he was rendered unconscious and that his neck, shoulder, chest and back were injured. He testified that he was hospitalized two days, that he was out of work over a week and had been unable to work overtime since the collision and that, at the time of the trial in 1964, he still suffered from headaches and pain in his left arm. At the hospital his doctor believed that he had suffered a mild concussion and diagnosed his other injuries as contusions of the cervical and thoracic areas of the spine. The doctor considered these injuries to be nonpermanent. Haleem received a $47 bill from his doctor, a $139.40 hospital bill and claimed loss of earnings in the sum of $73.60. The jury awarded him $47.

The second plaintiff, Shalabi, testified that his neck, back and knee were injured, that he spent a week in the hospital and recuperated at home a second week, that he missed two weeks of work and that he had headaches for a year after the accident. Upon arriving at the hospital he complained of pain in his neck, left knee, ribs, back and of headache. His injuries were diagnosed as a mild concussion, a black and blue mark on his left knee and contusions of the thoracic and lumbar regions of his back. His physician did not believe that these injuries were permanent. Shalabi had a $99 doctor's bill, a $232.25 hospital bill and claimed lost wages amounting to $151.20. The verdict in his favor was for $250.

Malley, the third plaintiff, sustained a laceration of his forehead which required six sutures and he complained of shoulder pains. He testified that he suffered headaches and dizziness for a month afterwards and that his back and neck had hurt for three or four months. He was in the hospital for a week, left the hospital in a wheelchair but then got on a bus and went home. When his doctor last saw him a short time after he left the hospital he was considered to be on the road to recovery. Malley received a doctor's bill of $89 and a hospital bill of $242.25. The jury awarded him $332.

██ This court has frequently expressed its reluctance to interfere with the discretion of the jury as to the amount of damages to be awarded in personal litigation. This is particularly true in a case such as here where the trial was free of error. No complaint is made as to the instructions given to the jury on the measure of damages. There is no claim that evidence was improperly admitted or rejected. There is no indication that the verdicts were influenced by prejudice. Under such circumstances we have held that the amount of damages awarded by the jury will not be disturbed unless it is palpably inadequate or unless it is clear that the jury disregarded a proven element of damages. Ward v. Chicago Transit Authority, 52 Ill App2d 172, 201 NE2d 750 (1964); Corsello v. Warren, 51 Ill App2d 367, 201 NE 2d 155 (1964); Giddings v. Wyman, 32 Ill App2d 220, 177 NE2d 641 (1961).

██ To determine whether an award is grossly unfair or the result of a clear oversight by the jury necessarily requires a review of all of the testimony surrounding the claimed items of damage. The mathematical computation of bills received and the alleged loss of earnings represent only a part of the total evidence. Therefore, we do not accept the plaintiffs' contention that the sum of the claimed special damages automatically constitutes a minimum level of recovery which is

460

binding upon both the jury and a court of review. Special damages often may be a useful measure; they need not be an incontestable basis in the determination of a proper award.

 There are other evidentiary matters to be considered. The testimony surrounding the claimed injuries may have been impeached or it may be contradictory or unreliable. There may be evidence which carries an implication that the injuries have been exaggerated or even feigned or that the medical treatment was either unnecessary or prolonged. There may be evidence which makes doubtful the necessity of the time alleged to have been missed from work. All of these and like factors must be weighed. And if there appears to be evidence suggesting a genuine conflict as to the legitimacy of the expenses incurred, then the verdict of the jury should not be disturbed on review. The jury has the function of determining the credibility of witnesses and the weight to be given their testimony. It is usually instructed to consider all of the evidence in the light of its own experience in the affairs of life. This prerogative should not be withdrawn from the jury if there is any evidence tending to support its conclusion as to the amount of damages actually sustained. Thus this court has said that it will affirm verdicts, however low, which are sustained by evidence or the absence of particular evidence. Daly v. Vinci, 51 Ill App2d 372, at 386, 201 NE2d 200, at 207 (1964). In Jeffrey v. Chicago Transit Authority, 37 Ill App2d 327, 185 NE2d 384 (1962), a rear-end collision case, we affirmed a verdict of no damages where the plaintiffs' testimony was impeached and self-contradictory and the testimony of the treating physician could have been deemed unworthy of belief.

The plaintiffs cite several cases where Illinois courts have awarded plaintiffs new trials on the issue of damages because the verdicts of the jury amounted to less than the claimed out-of-pocket expenses. We have read

these decisions and find that in each instance there was neither conflict nor dispute in the evidence surrounding the injuries or special damage claims. These cases are not applicable here.

A survey of the testimony in this case reveals that the jury had ample reason to question the injury and the expense claims of the three plaintiffs. Despite the physical evidence indicating a light impact between the two cars, the plaintiff Haleem claimed he was knocked unconscious for two or three minutes. Yet there is no evidence that he sustained any bump or bruise in the head region and shortly thereafter he was able to walk unaided to a police station. Haleem claimed he suffered dizziness for 13 months but his own doctor testified that his concussion was only mild and not as strong a blow as the type football players get. Likewise this plaintiff complained that his headaches and pains persisted to the time of trial and that he was still unable to use his left arm. This testimony could have been viewed with suspicion because his doctor, at the time he was examined and treated, believed his injuries were not permanent and that continued treatment would restore his normal muscle function. Haleem further testified that after he left the hospital he remained at home in bed for three days. His employment records, however, showed that he worked the three days following his release from the hospital. He also claimed that he was unable to do overtime work for a year because of these injuries, yet there was proof that even during the two week period subsequent to the accident he worked more than six hours of overtime. The lost earnings claim of this plaintiff was certainly contradicted by the record.

The testimony of the other plaintiffs was also suspect. Shalabi claimed that he was in pain for several months after the accident and that he had headaches for a year. His own physician testified that Shalabi's

concussion was mild and that he had improved by the time he left the hospital and should have had a complete recovery following normal treatment. His two-week absence from work might have seemed unnecessary in view of the fact that he was able to work seven hours overtime in the first week of his return to work. Malley claimed he had stiffness and pains in his neck for four months. His doctor did not believe that he had these pains; he testified that the hospital records did not show that Malley complained of neck pains. Shalabi and Malley testified that they stayed a week in the hospital; the doctor testified that both left the hospital on the fourth day after the occurrence. There clearly was evidence from which the jury could reasonably infer that the injury claims of these plaintiffs were exaggerated.

■ ■ There was also evidence indicating that the medical treatment received may have been unwarranted. The plaintiffs were given blood counts, urinalyses, electrocardiograms and hemoglobin treatments although no explanation was made connecting these tests and treatments with the diagnosed injuries. Extensive X rays were taken of parts of the plaintiffs' bodies which were in no way involved in the accident. In addition to the other drugs given the plaintiffs, the doctor administered a "special formula" of his own which admittedly duplicated the effect of the other drugs. Further, the jury could have taken into account the fact that each of the bills that the plaintiffs received from their doctor included a $25 charge for writing a report to the plaintiffs' attorney. The cost of trial preparation is not a proper element of special damages. Then too the jury may have considered the fact that the doctor, who treated all three plaintiffs, had a controlling ownership in the hospital into which they were admitted. He stood to personally profit by the treatment given in the hospi-

463

tal and the duration of the plaintiffs' stay therein. These facts justified the jury's scrutiny of the necessity and reasonableness of the plaintiffs' medical expenses.

██ ██ We conclude that there was enough evidence in the record to establish a genuine conflict as to the nature and extent of the plaintiffs' injuries and the validity of their special damage claims. The credibility of the plaintiffs was shaken and their evidence sharply disputed. The verdicts under these circumstances were not palpably inadequate and it has not been convincingly shown that the jury disregarded a proven element of damage.

The judgments of the court are affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.