The First National Bank of Elgin, Conservator of the Estate of Michael Kirk, Incompetent, Plaintiff-Appellant, v. Michael Szwankowski, Defendant-Appellee.

Gen. No. 68–130.

Second District.

June 12, 1969.

Kirkland, Brady, McQueen, Martin & Callahan, of Elgin, for appellant.

Matthews, Jordan, Dean and Suhler, of Aurora, for appellee.

PRESIDING JUSTICE MORAN delivered the opinion of the court.

Plaintiff, Conservator, appeals from the trial court's denial of its post-trial motion seeking a new trial as to damages only on behalf of the plaintiff, Michael Kirk, an incompetent.

The plaintiff received injuries in an auto accident which occurred on April 4, 1966, when the southbound vehicle in which he was a passenger skidded sideways into the northbound lane of Williams Road and was struck broadside by the northbound vehicle of the defendant, Michael Szwankowski. Two of the occupants of the plaintiff's vehicle died in the collision. Only the plaintiff, (who has no recollection of the occurrence and is incompetent as a result of it) along with a passenger, Randy LeMar, survived.

LeMar testified that, on the night of the occurrence, their driver, McDaniels, picked him up at about 7:30 p. m. and he, along with the other three teenage boys, departed on their way to a drive-in movie. The plaintiff was sitting in the left rear seat. After discovering that the movie was not open they stopped for a soft drink at a restaurant in Algonquin, Illinois. Leaving the restaurant, they drove to Williams Road, a paved, two-lane blacktop road. As they proceeded south on Williams Road at about the speed limit of 65 miles per hour, LeMar, who was in the front seat, told McDaniels, the driver, to slow down. McDaniels slowed down to 55 or 60 miles per hour. Just north of where the accident occurred there is a series of three small hills. McDaniels' car was traveling 60 to 65 miles per hour as it went over the first hill. As the vehicle went over the second hill, the witness saw illumination coming over the last hill. He again warned the driver as to speed. The driver took

270

his foot off of the accelerator but did not apply the brakes. As the vehicle came over the last hill, the speed of the car was about 60 miles per hour and the witness saw four bright headlights. McDaniels turned his head to the right, toward the witness, and squinted his eyes. The right wheels went off the road onto the right shoulder. He pulled back onto the road and the vehicle turned sideways, skidding into the northbound lane, where the McDaniels' vehicle was struck broadside by the defendant's car.

On cross-examination, LeMar stated that he did not tell the police officer that the defendant's car had its bright lights on because the police officer had not asked him. He did tell the police officer that the McDaniels car was going at a high rate of speed. The witness was sure that the defendant's driving lights were on bright because he saw four headlights on the vehicle and they did not dim prior to the impact.

The investigating police officer testified to the position of the vehicles at the scene and to his conversation with LeMar at the emergency room of the hospital following the accident. The most significant portion of his testimony concerned an alleged admission of LeMar that his driver jammed on the brakes and the car went off the road.

The jury considered the testimony of four doctors. Without going into the details, the treating physician was of the opinion that plaintiff sustained a brainstem contusion with multiple punctate, generalized with hemorrhaging within the brain and brainstem; that he was confined at Sherman Hospital from April 4, 1966 to May 14, 1966, where his behavior was irrational, noisy and bizarre; that he was restrained by straps and ultimately transferred to Rest Haven Hospital because his screaming disturbed the other patients; that while in the hospital he was without bowel control. The treating physician's

final diagnosis was a brainstem contusion with permanent brain damage.

One psychiatrist testified that the plaintiff was suffering from a chronic brain syndrome, gross force, with defect in his memory, learning ability and ability to think. In his opinion the plaintiff, who was 18 years of age at the time of the accident, had a mental age of eight years. He conducted an examination of the plaintiff in January and October of 1967. In his opinion the highest mental age the plaintiff can ever attain will be that of a ten-year old. He is not capable of working with tools or of living by himself or taking care of himself independently. He may be capable of doing menial work, such as sweeping and cleaning up.

A psychiatrist on the staff of Rest Haven Hospital testified that the plaintiff was hospitalized there from May 14, 1966, to August 28, 1967. His findings of November 1966 revealed that the plaintiff was confused and out of context; he could not respond to questions; he had no control over his bodily functions. He diagnosed the plaintiff as suffering from an acute brain syndrome associated with trauma with behavioral reactions. The diagnosis was finally changed to chronic brain syndrome due to trauma. In this doctor's opinion the plaintiff had a mental age of seven years with impaired judgment, decreased ability to learn and childish behavior which is permanent in nature. The highest mental level that he can ever attain will be that of an eight-year old and he can not learn a skill.

The current room and board charge for minimum care facilities is $125 per month and the rate continues to rise. The bill from Rest Haven Nursing Home was $13,887.

A fourth doctor, a neurosurgeon, saw the plaintiff in the emergency room and found a positive Babinski sign. An electroencephalogram indicated damage to brain cells. Such tests were made in May and July of 1966. The

final test given in October of 1967 was substantially normal. A lumbar puncture taken in April of 1966 found pressure and blood in the spinal fluid. The witness anticipates permanent impairment of mental functions. His bill was $355, of which $340 had been paid.

The employer of the plaintiff at the time of the accident, testified that Michael was one of the most apt beginners he had ever had, with a definite future with the firm doing radius grinding, a highly skilled job, in the manufacture of ball bearings. At the time of the accident the plaintiff was earning $2.15 per hour and in three or four years he would have earned $3.50 per hour. He never returned to work.

Plaintiff's first cousin testified that at the time of the accident he had been living with her almost two years. He had never failed any grade school classes and had left high school in his senior year. In August of 1967 he left Rest Haven to live with her family in Tennessee. At the present time he cannot pay any attention to television or understand fifth grade work or books.

The medical bills incurred and paid are as follows:

Sherman Hospital ................ $2,215.80
Doctor A. Baumont Johnson ....... 340.00
Doctor F. Travis ................ 500.00
Rest Haven Hospital ............ 13,887.00

The only witness produced by the defendant was an investigating police officer.

The jury returned a verdict on behalf of plaintiff against the defendant in the sum of $20,000 and answered two special interrogatories propounded by the defendant.

The first interrogatory, answered in the affirmative, queried:

"Was the Defendant, MICHAEL SZWANKOWSKI, guilty of negligence which was one of the proximate causes of the injuries to the Plaintiff, MICHAEL KIRK?"

273

The second interrogatory, answered in the negative, queried:

"Was the sole proximate cause of the injury to the Plaintiff the conduct of some person other than the Defendant?"

Defendant argues that before a new trial on damages can be granted there must be error at the trial court level that misled or prejudiced the jury and plaintiff complains of no error in the trial of the case other than the amount of the verdict. Defendant's argument is not supported by the many cases cited and this court is unable to find any precedent supporting his argument.

■ Ordinarily the question of damages is peculiarly one of fact for the jury and courts are reluctant to interfere with the discretion of the jury. Flynn v. Vancil, 41 Ill2d 236, 240, 242 NE2d 237 (1968). In the present case the grave and permanent injuries sustained by the plaintiff were not contradicted by any defense evidence. The verdict of the jury is less than the out-of-pocket medical expenses and lost wages sustained from the date of the occurrence to the date of trial. There appears to be no question of the validity or reasonableness of the medical expenses and the amount of lost wages. Therefore, the question thus presented to this Court is whether the verdict is the result of a compromise of the liability and damages or the result of some other misadventure.

■ ■ It is well settled that a court is not justified in ordering a new trial on damages alone where it appears that the damages awarded by the jury were the result of a compromise on the question of liability. McManus v. Feist, 76 Ill App2d 99, 103, 221 NE2d 418 (1966). Ordinarily, a court will not interfere with the discretion of the jury in its assessment of the damages except where the award is palpably inadequate or it is clear that a proven element of damages has been ignored, Lazzaro

274

v. Garrett, 100 Ill App2d 452, 242 NE2d 59 (1968), or it is shown to be erroneous or the result of passion or prejudice, or where it clearly appears from the uncontradicted evidence that the amount of the verdict bears no reasonable relationship to the loss suffered by the plaintiff. Rapp v. Kennedy, 101 Ill App2d 82, 86, 242 NE 2d 11 (1968).

The jury heard the only surviving, competent witness to the occurrence and observed his conduct under vigorous cross-examination. The investigating police officer also testified. At the conclusion of its deliberations the jury returned a general verdict on behalf of the plaintiff against the defendant. It also answered two interrogatories propounded by the defendant. Both of these interrogatories were answered in favor of the plaintiff and were consistent with the general verdict.

■ Part of the rationale supporting the practice of propounding an interrogatory to a jury is that a jury more clearly comprehends a particularized special interrogatory than a composite of all the questions in a case, and therefore, presumably, the jury has more intensively focused its attention upon the question presented. Houston v. Leyden Motor Coach Co., 102 Ill App2d 348, 243 NE 2d 293 (1968). Extending that rationale to the fact of this case compels this court to the belief that the jury thoroughly considered the liability issues and the ample evidence supporting the verdict. The court is unable to say, with any certainty, that the jury compromised the damages awarded against the liability. This is especially so when the alternative is to hold that the general verdict of the jury was not supported by the evidence and the jury totally disregarded the answers to the special interrogatories.

We are unable to imagine the misadventure the issue of damages suffered during the deliberations of the jury. It is apparent that the jury improperly assessed the amount of the damages for the verdict bears no

reasonable relationship to the loss suffered by the plaintiff. The verdict does not even satisfy the uncontradicted elements of damages relating to medical expenses and lost wages.

■■ We view this case as did our Supreme Court in the case of Paul Harris Furniture Co. v. Morse, 10 Ill2d 28, 139 NE2d 275 (1956) where at page 46 it stated:

". . . that either a trial or an appellate court may set aside an inadequate verdict and order a new trial solely on the issue of damages in a proper case, that is, in a case where the damage issue is so separable and distinct from the issue of liability that a trial of it alone may be had without injustice. (Gasoline Products Co. v. Champlain Refining Co. 283 US 494, 75 L ed 1188.) We believe that in the instant case, since the verdict against Walker on the question of liability was amply supported by the evidence, the question of the amount of damages is separable and distinct from the issue of liability, and that the error which resulted in inadequate damages did not affect the issue of liability."

Accordingly, the order denying the plaintiff's post-trial motion is reversed and the cause is remanded to the trial court with directions to order a retrial on the issues of damages only.

Reversed and remanded with directions.

ABRAHAMSON and SEIDENFELD, JJ., concur.