MARY WEGNER MEYERS, Plaintiff-Appellee, v. NANCI K. LOUTHAN, Defendant-Appellant.

Third District    No. 82—484

Opinion filed May 17, 1983.

BARRY, J., dissenting.

Robert V. Dewey, Jr., and Judith A. Schieber, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

James E. Bowles, of Goldfine & Bowles, P.C., of Peoria, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

Nanci K. Louthan, having been granted leave to appeal, appeals from an order of the circuit court of Peoria County which granted Mary Wegner Meyers a new trial on all issues after a jury had awarded Meyers a judgment in the amount of $136 as damages arising from a collision at an intersection.

Meyers, hereinafter referred to as the plaintiff, testified that on January 3, 1978, in the early afternoon, she was driving her automobile in the city of Peoria. Her destination was the Bemis Bag Company where she was employed and she was due to report for work at 3:30 p.m. Plaintiff was driving a 1977 Granada automobile and road conditions were "icy and snowy." Plaintiff, arriving at an intersection, stopped and while so stopped was struck by a vehicle driven by Louthan, the defendant, who testified that she had been traveling at a speed of five to 10 miles per hour. The impact was unquestionably slight. The plaintiff's vehicle either did not move or at the most moved approximately one foot as the result of the impact. The only damage resulting from the collision was a golf-ball-size dent on the rear bumper of plaintiff's vehicle.

At the time of the accident neither the plaintiff or her passenger or the defendant and her passenger, a 79-year-old lady, complained of any injuries. The police arrived at the scene of the accident and no one complained to them as to any injuries.

After the police investigation the plaintiff proceeded to her place of employment. After working two hours the plaintiff drove herself to the St. Francis Hospital where she complained of pain and immobility as to her neck. After being X-rayed and being given muscle relaxers and pain pills, the plaintiff was released with the advice to see her family physician if pain persisted. Several days later on January 5, 1978, she engaged the services of a chiropractor, Denzel D. Jines. The chiropractic treatment received by the plaintiff was extensive. Approximately 2½ years later plaintiff received treatment from Dr. Lawrence Holden, a neurosurgeon, who had her admitted to the St. Francis Hospital on September 1, 1980. The plaintiff, as the result of medical and hospital expenses and loss of wages, alleged damages in the approximate sum of $10,500. A portion of this sum was a $136 charge for the emergency treatment which plaintiff received at St. Francis Hospital.

During the trial of this case expert testimony on behalf of the defendant was presented. Dr. Loren Whittaker, a board-certified general surgeon, had examined the plaintiff and he testified that his examination revealed no abnormalities except for a congenital problem in her lower back. He found no muscle spasm or restriction in range of motion in either her neck or back and found no reason why she could not work except for possible complications attributable to her congenital problems which pre-existed the accident. Dr. Whittaker compared X rays taken within a few days after the accident with those taken in 1981 and testified that the comparison did not disclose any objective evidence of disability on the part of the plaintiff. In answer to a hypothetical question Dr. Whittaker testified that any muscle strain which plaintiff might have experienced as the result of the accident would be of a minor degree and would disappear within a short period of time.

Dr. Joseph Johnigk, a chiropractor who had treated the plaintiff prior to the accident, testified that plaintiff had pre-existing problems in each of the areas of her body which she claimed were injured in the accident and that these problems had not been cured when she left his care.

Chiropractor Dr. Jines on cross-examination testified that several physical confrontations in which plaintiff had been involved prior to the accident could have caused injury to her neck of a permanent nature.

The jury returned a verdict in the sum of $136, which represented the charge for plaintiff's initial emergency room treatment. Pursuant to motion of the plaintiff, the trial court granted a new trial as to all

issues.

The sole issue presented in this appeal is whether the trial court abused its discretion in granting plaintiff a new trial.

█ The tenor of the plaintiff's brief is to the effect that there was uncontradicted evidence that special damages were incurred by her in the sum of $10,500 and that damages in this amount indisputably proved that the jury's verdict was palpably inadequate. The mere fact that the plaintiff has expended or is obligated to expend a sizable amount of money and has suffered loss of income subsequent to the intersection accident does not *per se* establish the amount of damages which a jury should award to her. The measure of damages for physical injury may be broadly stated to be such sum as will compensate the injured person for all losses *directly sustained by reason of the injury*. (15 Ill. L. & Prac. sec. 141, at 447 (1968).) In the instant case the evidence established that the plaintiff had a congenital problem with her back. She had received treatment for such condition prior to the intersection accident. Medical evidence was strong to the effect that her pre-existing problems in the body areas that she claimed were injured by the accident were no more serious after the accident than they were prior to the accident. Evidence established that physical confrontation in which plaintiff had been involved prior to the accident could have caused permanent injury to her neck.

In the light of this evidence, together with the low-speed impact of the vehicles which caused minimal damages to the vehicles, plus a number of inconsistent statements made by the plaintiff, it is obvious that the jury chose not to believe that plaintiff's physical problems resulted from the intersection accident.

The factual situation in the instant case closely resembles the facts in *Khatib v. McDonald* (1980), 87 Ill. App. 3d 1087, 410 N.E.2d 266. *Khatib* involved the sideswiping of two vehicles on Lake Shore Drive in Chicago. The estimated speed of the vehicles was approximately eight miles per hour. The plaintiff complained of no injuries and received no treatment at the time of the accident, but later complained of lower back pain. The plaintiff presented evidence of medical and hospital bills which totalled more than $3,300 and of projected future wage loss in the sum of $254,578. The evidence adduced at trial indicated that there was some question as to whether plaintiff was injured as extensively as he claimed and whether all of the medical expenses were necessary. The jury returned a verdict in the sum of $3,000, and plaintiff appealed from a denial of his motion for new trial. The reviewing court granted a new trial because of errors committed, but refused to accept plaintiff's contention that a verdict for

less than out-of-pocket expenses is palpably inadequate.

■ The granting of a new trial is within the discretion of the trial court but such action is reviewable for the purpose of determining whether there has been an abuse of discretion. The granting of a new trial was reversed in the case of *Nicholl v. Scaletta* (1982), 104 Ill. App. 3d 642, 432 N.E.2d 1267. We will not set forth in detail the factual situation in *Nicholl* but will make the observation that it is strikingly similar to that presented in the instant case. As in the case of *Nicholl* we find that the trial court in granting a new trial abused its discretion, and thereby reverse the order of the circuit court of Peoria County granting a new trial, and remand this case with directions that judgment be entered on the jury's verdict.

Reversed and remanded.

STOUDER, P.J., concurs.

JUSTICE BARRY, dissenting:

In my opinion, the trial court did not abuse its discretion in granting a new trial. Because the amount awarded by the jury is precisely the amount of plaintiff's out-of-pocket expenses incurred solely for emergency hospital treatment, I am convinced that the jury's verdict represents a compromise upon the issue of defendant's liability and plaintiff's damages. Such a compromise verdict is proper grounds for awarding a new trial. *Glover v. City of Chicago* (1982), 106 Ill. App. 3d 1066, 436 N.E.2d 623.

Furthermore, considering the jury's finding of liability on the part of the defendant, the $136 award is patently inadequate and bears no reasonable relationship to plaintiff's compensable losses. On the day of accident, plaintiff proceeded to her place of employment; but after two hours, she said she began to experience pain in her back and neck. In any event she left work and went to the emergency room of the hospital, missing the remaining six hours of the shift on that day. An additional 19 days of work were missed thereafter because of her injuries. The jury found that plaintiff's emergency hospital treatment was causally related to her injury. Her loss of work then for the time spent getting such treatment, at the very least, was causally related and compensable as well.

Having read the record of the trial in this case, I cannot escape the conclusion that the jury either misunderstood the instruction on the elements of compensable damages, or awarded $136 as a compromise verdict on liability and damages. The granting of a new trial is

an appropriate remedy in this case. See *Duncan v. Peoria Yellow Checker Cab Corp.* (1977), 45 Ill. App. 3d 653, 359 N.E.2d 1242.

I would affirm the judgment of the trial court awarding a new trial.