PHYLLIS C. WILLIAMS, Plaintiff-Appellant, *v.* ROBERT R. McCALLISTER, Defendant-Appellee.

Third District   No. 77-449

Opinion filed June 7, 1978.

636

Arthur R. Kingery, of Strodel & Kingery, Assoc., of Peoria, for appellant.

Duncan B. Cooper and Douglas J. Pomatto, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

In this appeal plaintiff Phyllis Williams challenges as inadequate a jury verdict awarding the exact amount of her medical bills for a "whiplash" injury incurred in an automobile accident.

During the late afternoon of August 23, 1973, plaintiff was driving along a two-lane highway when she had to stop suddenly to allow a small car ahead of her to turn left. Defendant Robert R. McCallister, who was driving his pickup truck behind plaintiff, was unable to stop in time and ran into the rear of plaintiff's car. After the accident plaintiff went home, but a few hours later she went to the hospital emergency room with severe pain and stiffness in her neck and shoulders. After X rays disclosed no fractures, she was sent home. She was able to work the next day, but when the stiffness continued, her personal physician referred her to Dr. Steven Jarrett, a specialist in physical medicine and rehabilitation, who first saw plaintiff on September 5, 1973.

During Dr. Jarrett's examination of plaintiff, he found spasms in the neck and shoulder muscles, but no symptoms of nerve injuries. He diagnosed a soft tissue injury (cervical myofascitis) accompanying a traumatic sprain or strain. He gave plaintiff some injections for pain and prescribed daily physical therapy treatments consisting of moist heat from a hydrocollator pack followed by traction. Her condition began to improve, and by September 28, she had no objective symptoms. She had a full range of neck motion; no tightness, spasm, or tenderness of the muscles; and no complaints of numbness. The doctor prescribed the daily use of the hydrocollator pack and exercises at home.

Plaintiff returned to Dr. Jarrett on December 18, 1973, with complaints of weakness in her left arm and numbness in the fingers of her left hand.

The doctor again examined her and found no muscle spasms, no tightness or tenderness, and no nodules. Since he could find no objective symptoms, and since her subjective complaints "did not fit any type of organic pattern," he decided to perform an electromyographic examination to test the nerve supply to the neck and arm muscles. The results of that test were normal. Then nerve conduction velocity tests of the medial and ulnar nerves were performed, and again the results were within the normal limits. Thus the possibility of a nerve injury as the cause of the numbness in her fingers was eliminated. When asked for his opinion as to the cause of the numbness, Dr. Jarrett replied: "I think there was a certain amount of emotional overlay present which produced many of the findings we found on the physical examination."

Dr. Jarrett also testified that plaintiff, who was then 40 years old, had some spur formation and other signs of osteoarthritis in the upper back, as revealed by the X ray taken on the day of the accident. This condition was described as resulting from the aging process. On cross-examination the doctor was asked what evidence he had that plaintiff's symptoms were produced by "an emotional overlay," and he explained that every time he tried to test her muscle strength in the left arm, she would let her arm give way and that no matter what area of her left arm he tested with pinpricks, she said it felt dull. Also when he tested for a Tinel sign by tapping on her left wrist, left shoulder, and left forearm, she reported a tingling in her fingers in each case; however, such a response from the shoulder or forearm is physically impossible. He stated that at that time her muscle injuries were healing and in his opinion the prognosis for further healing was good.

On October 2, 1974, plaintiff was examined by Dr. Hugh J. McMenamin who is also a specialist in physical medicine and rehabilitation. Dr. McMenamin testified that plaintiff complained of pain on the left side of her upper back up to the back of her neck. He found three objective symptoms: limited rotation of the neck, a muscle spasm in the muscles on the left side of the upper back and neck, and a decreased pulse in the left arm upon performance of "Addison's test" for possible artery compression. His diagnosis was cervical radiculitis which means an irritation of the nerve roots of the neck. He recommended use of the hydrocollator pack and traction once each day at home. Dr. McMenamin saw plaintiff at regular intervals and noted her reports of some pain and discomfort and a slight limitation of neck rotation remaining. His prognosis is that plaintiff will continue to have recurrence of pain and muscle tightness and that her condition is permanent. On cross-examination he admitted that the spur formation in her neck could cause some limitation of neck rotation.

Plaintiff's medical bills of $588.80 were introduced into evidence. Plaintiff testified about the pain she has suffered and the restrictions on her

638

activities. She does her housework, but can no longer do yardwork or sewing. She also continues her work as a teacher of home skills to mentally retarded adults.

The jury returned a verdict of $588.80 in favor of plaintiff from which she has appealed.

Plaintiff contends that the award of damages was contrary to the manifest weight of the evidence because the jury failed to take into account the evidence that plaintiff had endured considerable pain and suffering, that she had some permanent disability and that she would continue to need treatment. Plaintiff argues that once the jury has determined that defendant is liable for her injures, it must determine the amount of liability based on all the elements of damages which are clearly proved. The jury was instructed as follows:

"If you decide for the plaintiff on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate her for any of the following elements of damage proved by the evidence to have resulted from the negligence of the defendant:

The nature, extent and duration of the injury. The disability resulting from the injury. The pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injuries. The reasonable expense of necessary medical care, treatment, and services received and the present cash value of the reasonable expenses of medical care, treatment and service reasonably certain to be received in the future.

Whether any of these elements of damages has been proved by the evidence is for you to determine."

This instruction has not been challenged.

■■■ As a general rule the question of damages is peculiarly one of fact for the jury, and courts are reluctant to interfere with the discretion of the jury. (*Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242 N.E.2d 237.) If no complaint is made as to the jury instructions or the admissibility of evidence, the reviewing court will not disturb the amount of damages unless the award is palpably inadequate. (*Kelley v. Cross* (3d Dist. 1967), 79 Ill. App. 2d 342, 223 N.E.2d 555.) In those cases where the damages awarded are less than the undisputed out-of-pocket expenses or where nominal awards are returned notwithstanding uncontested evidence of serious permanent injuries, a new trial should be granted. (*E.g., Duncan v. Peoria Yellow Checker Cab Corp.* (3d Dist. 1977), 45 Ill. App. 3d 653, 359 N.E.2d 1242; *O'Brien v. Howe* (3d Dist. 1961), 30 Ill. App. 2d 419, 174 N.E.2d 905.) In the case before us, a new trial is not required because here the jury did award plaintiff her out-of-pocket expenses, and because the

evidence concerning the seriousness and permanency of her injuries was contested.

In a factually similar case, where two plaintiffs suffered whiplash injuries in an accident and were awarded damages in the exact amount of their medical bills, the court stated:

> "Whereas, a conscientious practitioner, in the absence of significant objective findings, would be bound by the patient's subjective complaints to commence upon a prescribed course of treatment, the jury is not bound to so believe 'in the light of their own observation and experience in the affairs of life.' This jury may well have believed that plaintiffs' injuries here were most minimal, to the point of being incapable of evaluation, and that plaintiffs would be fairly compensated if they only received their specials. We must not mislay the jury's inherent right to pass upon the credibility of the evidence and the witnesses." *Giddings v. Wyman* (4th Dist. 1961), 32 Ill. App. 2d 220, 223-24, 177 N.E.2d 641. Also, *Kelley v. Cross* (3d Dist. 1967), 79 Ill. 2d 342, 223 N.E.2d 555.

In the case at bar, it is evident from the record that the testimony of Dr. Jarrett cast considerable doubt upon the testimony of Dr. McMenamin. Dr. Jarrett stated that plaintiff's injured neck and back muscles were healing in September of 1973, and that her complaints in December, 1973, were emotional in origin, not organic. His tests ruled out any traumatic cause for her reports of pain and stiffness. Dr. McMenamin, on the other hand, treated her for a nerve root ailment, and said he believed her disabilities to be permanent. We believe the medical testimony presented a question of fact as to the extent her complaints were attributable to the accident, and such a question of fact was, of course, quite properly for the jury to resolve.

Plaintiff relies upon *DeFreezer v. Johnson* (3d Dist. 1967), 81 Ill. App. 2d 344, 225 N.E.2d 46, where this court reversed as inadequate a verdict for the exact amount of special damages proved. However, we find *DeFreezer* to be distinguishable on its facts. There plaintiff suffered a fractured vertebra in a fall; only one medical witness testified; and there was no evidence casting doubt on the severity of the injury or the permanency of the resulting disability.

On the basis of the record before us, we cannot say that the verdict here was contrary to the manifest weight of the evidence. Accordingly, we affirm the judgment of the Circuit Court of Tazewell County.

Affirmed.

STOUDER and SCOTT, JJ., concur.