THELMAR MONTGOMERY, Plaintiff-Appellee, v. THE CITY OF CHI-
CAGO, Defendant-Appellant.

First District (3rd Division)   No. 84—1771

Opinion filed June 28, 1985.

James D. Montgomery, Corporation Counsel, of Chicago (Philip L. Bronstein and Mary K. Rochford, Assistant Corporation Counsel, of counsel), for appellant.

Donald J. Kaufman, of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Thelmar Montgomery, filed suit against defendant, city of Chicago, seeking to recover damages for a back injury sustained when plaintiff's automobile struck a pothole in a city street.

After a trial, a jury awarded a verdict in favor of plaintiff against the city in the amount of $1,500. Finding that "some *** prejudicial factor must have been applied by the jury to the facts," the trial court granted plaintiff's motion for a new trial on the issue of damages only. A second jury awarded a verdict of $3,500 against the city and, without setting forth any reasons, the trial court again granted plaintiff's motion for a new trial on the issue of damages. Pursuant to Supreme Court Rule 306, the city filed a petition for leave to appeal from the order granting a new trial, and we allowed the city's petition for leave to appeal.

In March 1984, the second jury trial on the issue of damages was held. Plaintiff and his treating physician, Dr. Richard Egwele, were the only witnesses. Plaintiff, 68 years old at the time of the incident, testified that on October 24, 1978, he was driving his automobile when it struck the deepest part of a pothole. He described the pothole as being 7 to 8 inches deep and 6 inches wide. During his deposition, plaintiff had stated that the pothole was 8 feet deep and 10 feet wide. Plaintiff felt severe pain in his back and left leg. At trial, plaintiff testified that he parked the automobile near the curb in order to change a tire which was flat. He emerged from the car, took the jack out of the trunk, placed the jack in place and began to pump it. He had to stop and catch his back and some man changed the tire for him. At his deposition plaintiff stated, "I didn't go back to the hole until I changed my tire." At another point in his deposition he stated first that he changed the tire and then said that he changed the tire "with help."

After notifying the police, plaintiff returned home immediately following the incident, took a hot bath and went to bed. The following day, plaintiff was examined and treated by Dr. Egwele at a hospital

emergency room. Dr. Egwele prescribed medication and ordered X rays of plaintiff's back. Plaintiff returned home, but three days later he returned to Dr. Egwele's office complaining of pain in his back and left leg. The next day, October 29, 1978, he was admitted to the hospital where he stayed until November 19, 1978. A week after his release, plaintiff visited Dr. Egwele's office complaining of back pain and a swollen left knee. Dr. Egwele injected the knee and prescribed exercises and medication. Thereafter, he saw Dr. Egwele two or three times, the last time in May 1979. At that time plaintiff felt "pretty good." He testified that he had back pains occasionally and that his knee still bothered him. Plaintiff later testified that he had problems every day, that he slept on a board with his feet elevated, and that he occasionally placed hot towels on his back. Plaintiff introduced the following paid bills into evidence: $86.44 for emergency room services, $5,078.58 for hospital, $60.30 for medication, $505 medical bill, and $63.95 for tire repair.

On cross-examination, plaintiff testified that since the incident, he had pain in his back and knee only occasionally. He stated that he suffered an injury prior to this occurrence when someone pushed a cart into his back. This prior injury was "somewhere in the same locality" as the back injury here. In 1964, plaintiff retired on disability due to a back injury and blood clot, but stated that he had no back pain after 1964.

Dr. Egwele testified by means of an evidence deposition that he first treated plaintiff on October 25, 1978, at the hospital emergency room. Plaintiff had pain, tightness and limited movement in his back, and pain in his left leg. The X rays taken of plaintiff's back revealed spondylolisthesis, a forward displacement of lumbar vertebra. Dr. Egwele testified that this condition could not have been caused by trauma or by this occurrence. Dr. Egwele prescribed pain medication and muscle relaxants and sent plaintiff home.

On October 28, 1978, plaintiff returned complaining of back and leg pain. Dr. Egwele diagnosed plaintiff's condition as acute low back syndrome and strain. During plaintiff's hospitalization, he was placed in pelvic traction, was given medication for pain and back spasm, and received heat treatment on his back. When Dr. Egwele discharged plaintiff from the hospital, the muscle spasm and tension in the back had diminished. Plaintiff had functional range of motion of the back.

On December 7, 1978, plaintiff visited Dr. Egwele's office and complained of left leg pain. Dr. Egwele diagnosed the leg pain as iliatibial band and muscle tightness. He recommended treatment consisting of exercises and anti-inflammatory medication. From that visit

until May 1979, Dr. Egwele saw plaintiff on five occasions. When he saw plaintiff for the last time in May, plaintiff had no complaints about his back or leg and was able to walk without pain. Plaintiff's prognosis was good. The muscle spasm was caused by this injury and the injuries for which he treated plaintiff in the hospital and at his office were related to this occurrence.

On cross-examination, Dr. Egwele testified that plaintiff had a successful recovery, that he was no longer on medication, and that he would have no future disability arising from this injury. The plaintiff's primary injury was the muscle spasm, and the muscle spasm could be caused by physical exertion, such as changing a tire. The doctor was unaware that plaintiff tried to jack up his automobile after the accident.

Plaintiff's medical history included several back injuries. Plaintiff did not tell Dr. Egwele about the prior accident with the cart. Dr. Egwele testified that plaintiff had a history of blood clots, and the possibility of a blood clot was one of the reasons for his hospitalization. Although plaintiff was not released until November 19, a consultant on the possibility of a blood clot condition ordered him released on November 10, 1978. On redirect examination, Dr. Egwele testified that plaintiff remained in the hospital after November 10 because his back condition was not well enough.

■■■ On appeal, the city contends that the trial court abused its discretion in granting a new trial. A motion for a new trial is granted in the sound discretion of the trial court and should not be disturbed absent an abuse of that discretion. (*Nicholl v. Scaletta* (1982), 104 Ill. App. 3d 642, 432 N.E.2d 1267.) The question of damages, however, is peculiarly one of fact for the jury. (*Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242 N.E.2d 237.) Generally, the amount of damages awarded by the jury will not be overturned unless it is palpably inadequate or against the manifest weight of the evidence. (*Palmer v. Avco Distributing Corp.* (1979), 75 Ill. App. 3d 598, 394 N.E.2d 480, *aff'd in part, rev'd in part* (1980), 82 Ill. 2d 211, 412 N.E.2d 959), or unless it is clear that the jury disregarded a proven element of damages. *Khatib v. McDonald* (1980), 87 Ill. App. 3d 1087, 410 N.E.2d 266.

■■ The mere fact that the verdict is less than the claimed damages does not necessarily mean the award is inadequate even where the defendant offered no contradictory evidence, since the jury is free to determine the credibility of the witnesses and to assess the weight accorded to their testimony. (*Robin v. Miller* (1978), 67 Ill. App. 3d 656, 384 N.E.2d 889.) In *Haleem v. Onate* (1966), 71 Ill. App. 2d 457, 219 N.E.2d 94, the court explained the evidentiary matters to be con-

sidered in reviewing the record to determine adequacy of damages. The court first stated that a mathematical computation of bills received and the alleged amount of earnings lost does not automatically constitute a minimum level of recovery which is binding upon both a jury and a court of review. The court then, at page 461, listed some factors to be weighed:

> "The testimony surrounding the claimed injuries may have been impeached or it may be contradictory or unreliable. There may be evidence which carries an implication that the injuries have been exaggerated or even feigned or that the medical treatment was either unnecessary or prolonged. *** And if there appears to be evidence suggesting a genuine conflict as to the legitimacy of the expenses incurred, then the verdict of the jury should not be disturbed on review."

In the present case, the jury had ample reason to question the facts surrounding the accident, the nature and extent of plaintiff's injuries, and the legitimacy of his medical expenses. Plaintiff's testimony concerning the size of the pothole was impeached as well as his statement that a stranger helped him change the tire. Plaintiff's testimony that he felt no back pain prior to the accident was contradicted by his admission that he retired on disability in 1964 due to a back injury. His testimony that he felt pain all the time was contradicted by his subsequent testimony that he felt well when he was released by the doctor in 1979 and now felt pain only occasionally. In view of the fact that plaintiff's testimony was impeached and contradictory, the jury could believe that plaintiff's injury was exaggerated.

Dr. Egwele's testimony reveals that the primary injury from the accident was muscle spasms. Plaintiff, however, in addition to the muscle spasms, was admitted to the hospital for spondylolisthesis, a disease unrelated to the accident, and the possibility of blood clots. Moreover, the report of the doctor treating the possibility of blood clots who ordered plaintiff's release from the hospital nine days before his actual release suggests that plaintiff's hospitalization was unnecessarily prolonged. Dr. Egwele further testified that plaintiff had successfully recovered from the back injury, was on no medication, and his prognosis was good. From the testimony of plaintiff and Dr. Egwele the jury was entitled to conclude that not all of the plaintiff's medical expenses were attributable to the present accident and to award less than out-of-pocket expenses. Where there is a genuine question as to the legitimacy of medical expenses incurred, then the verdict of the jury should not be disturbed. *Nicholl v. Scaletta* (1982), 104 Ill. App. 3d 642, 432 N.E.2d 1267; *Tipsword v. Johnson* (1978),

504

59 Ill. App. 3d 834, 376 N.E.2d 85.

■ The jury's verdict was not palpably inadequate or against the manifest weight of the evidence. There is also no indication that the jury disregarded a proven element of damages. There was no claim that defendant aggravated a pre-existing condition, nor does plaintiff suggest that the verdict was the result of error at trial (*Khatib v. McDonald* (1980), 87 Ill. App. 3d 1087, 410 N.E.2d 266) or prejudice (*Lukich v. Angeli* (1961), 31 Ill. App. 2d 20, 175 N.E.2d 796). The trial court abused its discretion in granting plaintiff's motion for a new trial.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Judgment reversed.

McGILLICUDDY and RIZZI, JJ., concur.