GRACE BUTKEWICZ, Plaintiff-Appellant, v. CHICAGO TRANSIT AUTHORITY *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—92—2522

Opinion filed August 17, 1993.

Law Offices of Patrick A. Murphy, of Chicago, for appellant.

Sanchez & Daniels, of Chicago (George L. Acosta and Lori S. Yokoyama, of counsel), for appellees.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff Grace Butkewicz, n/k/a Butkis, brought suit in the circuit court of Cook County charging defendant Paul Lewis, a bus driver employed by defendant Chicago Transit Authority (CTA), with negligence, as a direct result of which she suffered permanent injuries. Lewis, called as an adverse witness, related that on April 24, 1985, he was operating a CTA bus westbound on South Water Street in the City of Chicago's downtown area and when he arrived at the corner of Michigan Avenue, he signalled for a left-hand turn, intending to head southbound on Michigan Avenue. At that intersection, traffic was controlled by signal lights, but Lewis could not remember if turns were governed by signal arrows. He did remember, however, that there was a signal directing pedestrian traffic at the intersection, although at an earlier deposition he expressed doubt that a "walk/don't walk" indicator light was there.

While executing the left-hand turn onto Michigan Avenue, Lewis saw no pedestrians in the crosswalk or in a position to be struck by the bus. As he rounded the corner, at three or four miles per hour, he

noticed plaintiff standing on the concrete median which separates the southbound and northbound lanes of Michigan Avenue. Through his rear-view mirror, he observed the rear of his bus strike plaintiff with a force sufficient to move her some distance, although he provided no estimate of just how far, nor was one requested by counsel. He immediately stopped his bus, but, after realizing that he was blocking the intersection, he moved it out of the way, after which he alighted from the vehicle and went to plaintiff. He denied that she immediately complained of injuries and he also denied seeing a briefcase or glasses on the ground. However, he did agree that before leaving the scene, plaintiff indicated that her left wrist, arm and back pained her.

Plaintiff, who at the time of the accident was 30 years old and was an employee of Amtrak, testified that at that time she was physically fit and, with the exception of a minor work-related injury she sustained in October 1983, she had never experienced any physical infirmities before the accident. The 1983 injury arose from her aiding co-workers in the unloading of a pallet, as a result of which she experienced soreness in her back and arms. After her supervisor advised her to seek medical assistance, she saw Richard Seidel, Jr., M.D., who found no serious injury and prescribed aspirin for the condition.

Plaintiff also testified that she was in a recovery program for substance abusers and that as a teen, she had been addicted to amphetamines and alcohol, for which she first sought treatment in 1979, but she had not used either substance since then. As a part of her recovery program, she was encouraged to participate in sporting and recreational activities, such as volleyball, swimming and dancing, activities she participated in regularly before the accident. Plaintiff also stated that prior to the incident, she was fully able to do her household chores, and that she had taken only one sick day in the 15 months she had been employed by Amtrak before being injured in the accident at issue in this case.

Her description of the intersection of Water Street and Michigan Avenue was similar to Lewis', adding only that she clearly recalled that it was marked with pedestrian traffic control signals. She testified that on the day of the accident, she approached Michigan Avenue from the west and that, before crossing the street, she had checked the pedestrian signal, which indicated she could cross. She noticed the bus as it neared her while she was crossing Michigan Avenue. After taking a few more steps, she observed it pass behind her and then she saw a cab turning left onto Michigan, coming within a foot or so of hitting her. In order to avoid the cab, she stopped abruptly in the middle of the lane of traffic and only then realized that as the bus contin-

ued its turn, it would strike her, whereupon she braced for the impact by holding up her arm and turning her head.

The impact caused her to drop the briefcase she carried, knocked her purse off her left shoulder and her glasses from her face, but it did not cause her to fall. Immediately after the accident, she felt no pain nor, for that matter, any other sensation, because she was quite upset. Plaintiff was taken from the scene to a nearby hospital where the emergency room physician prescribed an over-the-counter pain reliever and released her. She awoke the next day experiencing a sharply painful back and a numb right arm, so she saw her own physician, who prescribed Valium and a codeine-based non-aspirin pain reliever. A few days later, when her condition did not improve, she again called her doctor, who advised her this time to check into a hospital, where she was treated with more pain relievers, hot compresses, and ultrasound. She remained hospitalized until the first week of May and continued to receive physical therapy on an out-patient basis throughout the next year.

During the summer of 1985, she continued to experience pain in her back and periodic numbness in her arm. She returned to work at Amtrak, but soon discovered that her injuries prevented her from performing her job. In July, plaintiff took three weeks off from work, and after this respite and further physical therapy, she returned to work, better able to fulfill her duties with Amtrak. She testified that during the summer she could no longer perform her household chores, and could not even attend her substance abuse program, but instead, had to hold the meetings in her home.

Plaintiff further testified that after the accident, she was no longer able to participate in the recreational activities she had enjoyed in the past; that she continued to experience pain which she treated with at-home remedies such as an elastic back brace, hot pads and whirlpool baths; and that in late 1986, she had to reenter the hospital after sustaining a further strain to her back while climbing up stairs. She would periodically seek treatment from other health care professionals, such as a chiropractor and a sports medicine physical therapist, because her back pain persisted. She offered into evidence invoices for medical services which totalled nearly $20,000. She also offered proof of lost wages in the amount of approximately $7,000.

Defendants presented the testimony of two orthopedic surgeons, Dr. Seidel and Thomas Gleason, M.D., both of whom opined that plaintiff's purported injuries could be psychogenic in nature. Gleason testified that the X rays taken immediately after the accident revealed no observable injury to the back, and in his estimation, plain-

tiff suffered, at worst, minor bruises and contusions from the accident. He also stated that he believed that any of the medical treatment she sought beyond the six or eight weeks immediately following the accident would have to be ascribed to some factor other than the 1985 accident because he could not envision its having caused her recurring back trouble.

Dr. Seidel testified that after being called in to consult on plaintiff's complaints with regard to her back, he found no objective manifestations of her claimed injuries. After twice performing a battery of tests, he found that the first time he conducted them, plaintiff complained of pain, but when he administered them a second time, she did not. From this he assumed that her complaints of pain did not accurately depict what she actually sensed or, at least, that her expressions of the severity of the pain were overstated.

The jury returned a verdict which found defendants negligent, but it also found plaintiff to be 33% at fault, and it assessed plaintiff's total damages to date of trial at $7,455.30, which it itemized to reflect $4,741.61 in medical expenses, $1,712.69 in lost wages, and $1,000 in pain and suffering. The verdict also reflected that plaintiff was entitled to no future compensation at all and denied her any recovery for past disability as well. After reducing the award to reflect plaintiff's comparative fault, the court entered a net judgment in favor of plaintiff for $4,955.05. Plaintiff's motions for an additur and subsequently for a new trial were both denied. This appeal followed.

On appeal, plaintiff does not take issue with the jury's declining to award her compensatory damages for future expenses or for future disability or loss of income; instead, her sole complaint concerns the viability of a jury's verdict which compensates a plaintiff for past medical expenses, past pain and suffering and lost wages, but awards her nothing for past disability. Plaintiff maintains that it is totally incongruous for the jury to agree with her that defendants' negligence caused her to incur medical expenses and suffer compensable pain, and yet fail to find that she was also disabled as a result of the accident. According to her, such a result is a fatal shortcoming on the part of the jury, warranting reversal and remand for a retrial exclusively on the issue of damages.

For well-defined and long-established reasons, the courts of this State have expressed great reluctance to interfere with a jury's determination of the amount of money which adequately compensates an individual for personal injuries suffered through the fault of another. (*Flynn v. Vancil* (1968), 41 Ill. 2d 236, 240, 242 N.E.2d 237, 240, *overruled on other grounds, Bullard v. Barnes* (1984), 102 Ill. 2d 505,

468 N.E.2d 1228.) It is only in those rare instances where the jury's assessment of damages works a great injustice on a plaintiff that reviewing courts will intercede. (*Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 407, 485 N.E.2d 4, 6.) Our supreme court has held that a verdict which is legally inconsistent is such an event and should be set aside. *Wottowa Insurance Agency, Inc. v. Bock* (1984), 104 Ill. 2d 311, 316, 472 N.E.2d 411, 413; see also *McGuckin v. Chicago Union Station* (1989), 191 Ill. App. 3d 982, 994, 548 N.E.2d 461, 469 (holding that a jury's verdict which contains inconsistent factual conclusions cannot be affirmed unless the inconsistencies are legally reconcilable), *appeal denied* (1990), 131 Ill. 2d 560, 552 N.E.2d 396.

A series of recent appellate court cases, upon which plaintiff relies, has invoked this rule in order to reverse verdicts which award monetary damages for past medical expenses incurred but give nothing for past pain and suffering. (*E.g., Healy v. Bearco Management, Inc.* (1991), 216 Ill. App. 3d 945, 576 N.E.2d 1195, *appeal denied* (1991), 142 Ill. 2d 654, 584 N.E.2d 129; *Rice v. Merchants National Bank* (1991), 213 Ill. App. 3d 790, 572 N.E.2d 439, *appeal denied* (1991), 141 Ill. 2d 559, 580 N.E.2d 133; *Kumorek v. Moyers* (1990), 203 Ill. App. 3d 908, 561 N.E.2d 212; *Hinnen v. Burnett* (1986), 144 Ill. App. 3d 1038, 495 N.E.2d 145. Contra *Buttita v. Stenberg* (1993), 246 Ill. App. 3d 1012 (rejecting *Hinnen*'s fundamental premise that pain and suffering is a necessary adjunct to compensable medical expense and holding therefore that a verdict which awards damages for past medical expense is not automatically inconsistent if it awards nothing for past pain and suffering).) The court in *Hinnen* provided a cogent statement of this rule and its rationale when it noted the following:

> "If the jury believed that plaintiff had no compensable pain and suffering, its award of pain-related expenses was wholly unwarranted and contrary to the manifest weight of the evidence. Conversely, if it believed that plaintiff's pain and suffering were sufficiently serious to warrant expenditures for pain medication and physical therapy, its failure to award her compensation for that pain and suffering means that it disregarded a proven element of damages." *Hinnen*, 144 Ill. App. 3d at 1046, 495 N.E.2d at 147.

Plaintiff urges that those decisions are dispositive of the issue in the case at bar. She claims that it is equally inconsistent for the jury, on the one hand, to agree with her that she experienced compensable pain and suffering which was caused by the accident, while at the same time rejecting her contention that, as a direct result of that

same accident, she was no longer able to perform her non-work-related "quotidian" activities such as volleyball, dancing and ordinary housework, which are the sum and substance of compensable disability as described by Illinois Pattern Jury Instructions, Civil, No. 30.04 (2d ed. 1981) (hereinafter IPI Civil 2d No. 30.04). *Morescki v. Leuschke* (1991), 217 Ill. App. 3d 456, 577 N.E.2d 547 (construing "disability" for the narrow purpose of IPI Civil 2d No. 30.04 to be a physical impairment which interferes with a plaintiff's everyday functions).

Plaintiff's contention does not survive scrutiny. The implicitly logical underpinning of *Hinnen* and its progeny was that human experience teaches all that some degree of pain and discomfort is a necessary accompaniment to an injury which calls for medical treatment. (*Schranz v. Halley* (1984), 128 Ill. App. 3d 125, 127, 469 N.E.2d 1389, 1390 (reversing and remanding for new trial on damages because "the experiencing of pain is such an obvious and natural result of the injury suffered here that a failure to award damages therefor constitutes reversible error").) But there is no similar direct, inherent cause and effect relationship between either past pain and suffering or past medical expenses and the type of disability contemplated by IPI Civil 2d No. 30.04. See *Williams v. Commonwealth Edison Co.* (1992), 232 Ill. App. 3d 85, 90, 596 N.E.2d 759, 762-63 (holding that a jury's verdict which awarded no past or future disability but granted future lost earnings was not fatally inconsistent and thus need not be reversed); *cf. Schranz*, 128 Ill. App. 3d at 127, 469 N.E.2d at 1390 (although reversing because of an inconsistent verdict, the court expressed no concern with the jury's award of zero dollars for the disability component of claimed damages).

■ We see nothing logically irreconcilable with the jury's finding that plaintiff here was not disabled even though it did find that defendants' negligence caused, to some degree, the injuries of which she complained. For example, the jury may not have believed her when she testified that before the accident she was an avid volleyball player or dancer. Moreover, even if it did accept that she participated in these activities before the accident, it reasonably could have rejected her assertion that after the accident she was no longer able to do so. In short, since plaintiff's testimony was the only source of knowledge the jury possessed with regard to her "quotidian activity," and if it were to find her testimony to be incredible, it would be fully consistent with such a determination to reject all of her uncorroborated testimony, including her claimed disabilities. (*Schranz*, 128 Ill. App. 3d at 127, 469 N.E.2d at 1390 (deferring to jury where the right to recover for disability is dependent on the subjective complaints of the

plaintiff).) The cases are legion which hold that courts should not tamper with an award of a jury where the amount awarded turned solely on its assessment of the relative credibility of the witnesses presented to it. *E.g., In re Glenville* (1990), 139 Ill. 2d 242, 565 N.E.2d 623; *Griffin v. Rogers* (1988), 177 Ill. App. 3d 690, 532 N.E.2d 591; *Haleem v. Onate* (1966), 71 Ill. App. 2d 457, 461, 219 N.E.2d 94.

Moreover, we find discrepancies in plaintiff's testimony which belie her averment that she was unable to perform any normal daily activities and which may supply a reason for the jury's awarding her no compensation for past disability. For instance, she testified that after she took three weeks' sick leave in July 1985, some two or three months after the accident, she was able to return to work full time, stating that she was able to do so because she was feeling better. Yet, she testified that at approximately the same time, she was unable to do her housework or to attend substance abuse meetings if they were held away from her home. Surely, the jury must have appreciated this inconsistency in light of the fact that despite her objective proof of lost wages in excess of $7,000, it awarded her only $1,712, an amount which does not bespeak any perceived great disability. Accordingly, since the jury's verdict can be easily and reasonably reconciled, it need not be considered inconsistent and, therefore, will not be reversed.

■ Plaintiff also argues that since she proffered extensive evidence on her pre-accident daily activities and her post-accident inability to perform them, and since this testimony was not directly negated by defendants' evidence, the jury's verdict with regard to disability is against the manifest weight of the evidence. In support of this argument, she parallels the facts *sub judice* to this court's decisions in *Martin v. Cain* (1991), 219 Ill. App. 3d 110, 578 N.E.2d 1161, *appeal denied* (1992), 143 Ill. 2d 639, 587 N.E.2d 1016, and *Barr v. Groll* (1991), 208 Ill. App. 3d 318, 567 N.E.2d 13. In *Barr*, the court reversed a jury's finding that the plaintiff suffered no compensable disability and was not entitled to any damages relating to future lost wages, medical expenses or pain and suffering. Similarly in *Martin*, the court held that the trial court erred in denying the plaintiff's motion for a new trial where the jury had returned a verdict which awarded the plaintiff past pain and suffering, but gave her no compensation for disability and disfigurement.

However, in both cases the proof of the alleged disability did not rest entirely on the believability of the self-serving testimony of the individual seeking damages. In *Barr*, the court found it difficult to accept that a jury could fully discount the testimony of seven health

care professionals who provided uncontradicted evidence that the plaintiff suffered a permanently disabling injury from head trauma which was indisputably caused by the defendant's tortious conduct. Likewise in *Martin*, there was objective evidence that the plaintiff was scarred by the negligence of the defendant which would clearly constitute a compensable disfigurement under IPI Civil 2d No. 30.04, yet on the jury's returned verdict form, the line-item reserved for disability and disfigurement bore a zero. The only conclusion the court could reach was that the jury ignored proven elements of damages.

Conversely here, plaintiff chose not to offer any testimony but her own in her attempt to persuade the jury that she was disabled as a result of defendants' conduct. Thus, unlike *Barr* and *Martin*, the reason plaintiff received no disability award can very well be understood to arise from its disbelief of her testimony, a determination with which we may not interfere. *Zitzmann v. Miller* (1990), 194 Ill. App. 3d 477, 482, 551 N.E.2d 707, 710, *appeal denied* (1990), 132 Ill. 2d 555, 555 N.E.2d 387.

Furthermore, a review of the record discloses more than adequate reasons for the jury to find plaintiff's testimony not worthy of belief, among which were that her subjective protestations of pain associated with a soft tissue back injury were not susceptible to objective confirmation. Too, defendants put forth evidence from which the jury could have inferred that her complaints of debilitating and excruciating pain, which was the sole evidence she offered in order to prove the extent of her injuries, were a sham, or at best, constituted an overstatement of her actual discomfort.

For example, defendants presented the testimony of Dr. Seidel, a board-certified orthopedic surgeon, who had treated plaintiff for the soreness she experienced in her 1983 incident at work and also for the injuries of which she complained after being hit by defendants' bus. Seidel recalled that during his examination of her, he found that her conduct was not consistent with that of other individuals with like injuries. While most patients are pliant and cooperate with the doctor, he testified, plaintiff exhibited great emotions at one moment, refusing to allow him to touch her, and in the next instant she would be calm and perfectly comfortable with the exam. Since he saw no relationship between his manipulation of her back and her wild swings of emotions, he ascribed her conduct to being a feigned overstatement of the extent of the pain she was experiencing. Seidel further related that after he had completed the exam, plaintiff became tranquil and then informed him that her attorney might contact him in order to learn of his diagnosis.

Moreover, Seidel's testimony was corroborated by defendants' expert, Dr. Gleason, a board-certified orthopedic physician and surgeon and an assistant clinical professor of orthopedic surgery at the University of Illinois Medical Center at Chicago, who narrated an impressive array of credentials, including extensive post-graduate training and experience with the diagnosis and treatment of adult spinal injuries and related nerve damage. After reviewing plaintiff's medical records, he concurred in Dr. Seidel's assessment that plaintiff's objective manifestations of pain had no apparent relationship with Seidel's manipulations of her back, but that the type and extent of the reactions appeared almost random. Like Seidel, he also suggested that the pain could be psychogenic in nature, and implied that it could be more litigation-related than anything else. If the jury chose to believe Drs. Seidel and Gleason, it reasonably could have inferred from their testimony that she suffered only a minor strain to her back from the bus accident which would not interfere with a reasonable person's ability to do those quotidian activities she claimed she was unable to perform, thus supporting its assessment that she was entitled to no recovery for disability.

This likely explanation of its verdict finds further support in the fact that the jury returned an amount for plaintiff's past medical expenses which was substantially less than the amount to which her objective evidence established she was entitled, again suggesting that the jury did not believe that the injuries she suffered were all caused by the 1985 accident. Alternatively, guided by its determination that she suffered only slight injuries in the accident, the jury could have similarly discerned that not all the medical treatment she received was necessary. Either interpretation of the award of past medical expenses reinforces our conclusion that the jury did not believe that the accident prevented plaintiff from performing her normal daily activities; thus, she suffered no compensable disability. Since its verdict finds support in the record, we cannot agree that it is against the manifest weight of the evidence; therefore, it will not be reversed on review.

Affirmed.

HARTMAN and DiVITO, JJ., concur.